UNITED STATES of America, Plaintiff,

v.

Jan A. DeGROOTE, Defendant.

No. Cr. 88–0003T.

United States District Court,
W.D. New York.

June 28, 1988.

Rosemary G. Roberts, Asst. U.S. Atty., Rochester, N.Y., for plaintiff.

Paul Cambria, Lipsitz, Green, Fahringer, Roll, Schuller & James, Buffalo, N.Y., for defendant.

## DECISION AND ORDER

KENNETH R. FISHER, United States Magistrate.

In this action, the defendant is charged in a five count indictment with conspiring to defraud the United States by impeding the Internal Revenue Service in its function of computing defendant's income taxes, 18 U.S.C. § 371, and with four counts of submitting false income tax returns for the years 1981, 1982, 1983 and 1984. 26 U.S.C. § 7206(1). Defendant has moved for various forms of relief as follows:

(1) Discovery of grand jury testimony.

(2) To compel the filing of a bill of particulars.

(3) Discovery of statements of co-conspirators.

(4) Discovery of IRS intelligence division chronological worksheets, and

(5) Discovery of the engagement of IRS employees James Donovan and David Johnson.

However, at oral argument, defense counsel withdrew his request for discovery of co-conspirator statements. Fed.R.Crim.P. 16(a)(1)(A); *In Re United States*, 834 F.2d 283, 286–87 (2d Cir.1987); *United States v. Percevault*, 490 F.2d 126, 131 (2d Cir.1974).

In addition, defense counsel withdrew his request for the IRS intelligence division chronological worksheets and information relating to the "engagement of IRS employees James Donovan and David Johnson" except to the extent that any such material must be disclosed by the Government pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Government represents that "it is aware of its duty under *Brady*, and its progeny," and the defendant is satisfied with this representation, at least for now.

Left for decision are the requests for discovery of Grand Jury material and a bill of particulars. The matter has been referred to the Magistrate pursuant to 28 U.S.C. § 636(b)(1)(A).

## I

As part of his motion for release of his grand jury testimony, defendant seeks also to discover a list, if any, of the names of personnel who had access to any grand jury information underlying this prosecution and who were the subject of a notification and certification to the district court pursuant to Fed.R.Crim.P. 6(e)(3)(B). See also, Fed.R.Crim.P. 6(e)(3)(A)(ii). Defendant admits that he has no caselaw authority in support of this branch of his motion, but he contends that "[t]he Federal Rules of Criminal Procedure contain no express prohibitions against the Government's complying with this request." Reply Memorandum at 2. The Government has not specifically briefed this aspect of defendant's motions but presumably it relies on the general argument supporting non-disclosure of grand jury materials made in response to the balance of defendant's motion.

██ A decision concerning discovery of the Rule 6(e)(3)(B) list requires an examination of the history of the rule. The 1977 amendments to Rule 6, which facilitated the increasing need of the Government for expert assistance during the grand jury stage of complex litigation, eased the requirement of obtaining prior court approval for the use in the grand jury of government experts. In its current form, the rule permits "[d]isclosure otherwise prohibited by this rule of matters occurring before the grand jury ... to ... (ii) such government personnel ... as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law." Fed.R.Crim.P. 6(e)(3)(A)(ii). Thus, the assistance of other government personnel at the behest of the United States attorney, such as IRS personnel, is permitted without court permission if such assistance is to enforce federal criminal law. *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 428,

**134**

103 S.Ct. 3133, 3140, 77 L.Ed.2d 743 (1983); *United States v. Kilpatrick*, 821 F.2d 1456, 1471 (10th Cir.1987), *aff'd on other grounds sub nom., The Bank of Nova Scotia v. United States*, —— U.S. ——, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988); *United States v. Lartey*, 716 F.2d 955, 964 (2d Cir.1983); *Coson v. United States*, 533 F.2d 1119, 1121 (9th Cir.1976) (per curiam).

As a safeguard, when a Rule 6(e)(3)(A)(ii) disclosure occurs or is contemplated, the Government attorney is required to "promptly provide the district court, before which was impaneled the grand jury whose material has been so disclosed, with the names of the persons to whom such disclosure has been made, and shall certify that the attorney has advised such persons of their obligation of secrecy under this rule." Fed.R.Crim.P. 6(e)(3)(B). The Senate Report explains as follows:

> In order to facilitate resolution of subsequent claims of improper disclosure, subparagraph (B) further provides that the names of government personnel designated to assist the attorney for the government shall be promptly provided to the district court and such personnel shall not utilize grand jury material for any purpose other than assisting the attorney for the government in the performance of such attorney's duty to enforce Federal criminal law. Although not expressly required by the rule, the Committee contemplates that the names of such personnel will generally be furnished to the court before disclosure is made to them.

S.Rep. No. 354, 95th Cong., 1st Sess. 7–8, *reprinted in* 1977 U.S.Code Cong. & Ad. News 527, 531. As one commentator has pointed out, "the better practice, and the one suggested by the legislative history, is for the court to be given notice prior to disclosure" because "the court could prevent disclosure to persons who are not within the intended scope of the provision." 8 *Moore's Federal Practice* ¶ 6.05[4], at 6–147 n. 90 (2d ed. 1988).

The parties have been unable, and the court has likewise been unable, to find any case which determines whether a defendant subsequently indicted by the Grand Jury may discover the names of government agents which were provided to the district court pursuant to Fed.R.Crim.P. 6(e)(3)(B). The rule does not require that the provision of names and the attorney's certification be filed. In addition, they evidently need not be in writing, although this also would be the better practice "to facilitate resolution of subsequent claims of improper disclosure." S.Rep. No. 354, *supra*, 1977 U.S. Code Cong. & Ad.News at 531.

However, the defendant is incorrect in stating that Rule 6 does not prohibit discovery by the defendant of a Rule 6(e)(3)(B) notice and certification in the absence of a court order. A "General Rule of Secrecy" prohibits the United States Attorney and others privy to its proceedings from "disclos[ing] matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(2). In the absence of a provision in the rule taking the Rule 6(e)(3)(B) notice and certification out of the category of "matters occurring before the grand jury" it is manifest that they relate to, describe, and are themselves in the hands of the impanelling district judge "matters occurring before the grand jury." Fed.R.Crim.P. 6(e)(2).

That phrase "has been defined as anything that will reveal what transpired during the grand jury proceedings." 8 *Moore's Federal Practice* ¶ 6.05[6], at 6–159 (2d ed. 1988). While the provision of grand jury secrecy "is intended only to protect against disclosure of what is said or what takes place in the grand jury room," *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52, 54 (2d Cir.1960), it clearly extends to all revelations which may readily be expected to "yield[ ] information regarding the scope or direction of the grand jury investigation." *United States v. Lartey*, 716 F.2d at 964. Disclosure of the Rule 6(e)(3)(B) notice is sought in this case not "for its own sake—for its intrinsic value in the furtherance of a lawful investigation—" but rather "to learn what took place before the grand jury." *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d at 54. Therefore, the

general secrecy provision of Rule 6(e)(2) applies.

The conclusion that discovery of the Rule 6(e)(3)(B) notice and certification should be governed by the same principles applicable generally to disclosure of grand jury materials finds support in *In re Grand Jury Proceedings*, 579 F.2d 836 (3rd Cir.1978). In that case, a witness objected to compliance with a subpoena duces tecum in the absence of a showing by the government that "it had complied with Rule 6(e) ... by providing the district court with the names of persons to whom disclosure of the subpoenaed information would be made ..." *Id.* at 837. The district court denied the witness' motion to inspect the notice and held the witness in contempt.

The Third Circuit affirmed on the grounds that the notice need not be made to the district court until after the disclosure to government personnel occurs and, moreover, the obligation to comply with the subpoena is independent of the obligation of the government to provide the district court with the notice. The Circuit Court added an observation pertinent to this case:

> We also believe that there are sound policy reasons why such revelations should not be a condition precedent to compliance with a subpoena. *The grand jury investigation might be compromised by the very act of disclosing the person to whom disclosure has been made.* By virtue of their names, geographical location or title, a subject of an investigation might be tipped off as to the direction in which the grand jury is heading.

*In re Grand Jury Proceedings*, 579 F.2d at 840 (emphasis supplied). The reasons supporting non-disclosure of the notice are therefore the same reasons supporting non-disclosure of "matters occurring before the grand jury" under the general secrecy rule of Fed.R.Crim.P. 6(e)(2). Accepting the Third Circuit's rationale, the Rule 6(e)(3)(B) notice and certification are but one aspect, *albeit* an integral one, of the matters occurring before the grand jury that are subject to the rule's secrecy provisions.

Finding that the notice and certification is protected from disclosure by Rule 6(e)(2), however, does not answer the specific issue raised in this case, *viz.*, whether a defendant in a criminal case may obtain disclosure after indictment and after the grand jury has completed its investigation. Because defendant's submissions to the court in support of a disclosure order covering the Rule 6(e)(3)(B) notice are indistinguishable from his submission in support of the general motion for disclosure of grand jury materials, the two motions may be considered together.

■ The rule is well settled that a defendant must establish, even after indictment and after the grand jury proceedings have concluded, a "particularized need" for disclosure under Fed.R.Crim.P. 6(e)(3)(C)(i) or that grounds exist to dismiss the indictment under Fed.R.Crim.P. 6(e)(C)(ii). *Dennis v. United States*, 384 U.S. 855, 869–70, 86 S.Ct. 1840, 1848–49, 16 L.Ed.2d 973 (1966) (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 683, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077 (1958); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400, 405, 79 S.Ct. 1237, 1239, 1241, 1243, 3 L.Ed.2d 1323 (1959)). It has been observed that such motions are "rarely granted" and that, "due to the strictly enforced tradition of grand jury secrecy, defendants generally have access to no information whatsoever regarding the conduct of the grand jury proceedings." *United States v. Mechanik*, 475 U.S. 66, 80, 106 S.Ct. 938, 947, 89 L.Ed.2d 50 (1986) (Marshall, J., dissenting). While the primary policy reason for secrecy "no longer obtain[s]" after indictment and arraignment of a defendant, *United States v. Lartey*, 716 F.2d at 964, sufficient policy reasons nevertheless exist to maintain secrecy at least when a defendant cannot make a showing of "particularized need" for disclosure. *See Douglas Oil Company of California v. Petrol Stops Northwest*, 441 U.S. 211, 222, 99 S.Ct. 1667, 1674, 60 L.Ed.2d 156 (1979) ("the interests in grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities"); *United States v. Sobotka*, 623 F.2d 764, 766 (2d Cir.1980) (same).

In *United States v. Moten,* 582 F.2d 654 (2d Cir.1978), the court stated that "no case in this Circuit has ever held that the secrecy of the grand jury must be breached, . . ., unless a showing of particularized need has been made, except in the case of a grand jury witness who is to testify at trial." *Id.* at 663. It is clear from these decisions, therefore, that the fact of defendant's indictment and the conclusion of the grand jury's investigation, do not excuse him from the requirement that he make a showing of particularized need.

■ The defendant has made no "preliminary factual showing of serious misconduct" sufficient to give rise to a motion to dismiss. Fed.R.Crim.P. 6(e) (1979 advisory committee note). Nor has he made any factual allegations sufficient to establish particularized need. The defendant contends that the IRS remained active in the investigation of defendant after the case was referred to the Department of Justice on May 29, 1985 pursuant to 26 U.S.C. § 7602, in that IRS Special Agent James P. Donovan used the offices of the United States Attorney to continue information gathering and the contacting of witnesses. Although defendant believes that IRS equipment, materials and facilities were used by IRS agents "throughout this post-referral investigatory period," defense counsel acknowledged at oral argument that a § 7602 referral should not, as a general matter, inhibit the continued participation of IRS agents in the grand jury investigation. *See United States v. Sells Engineering, Inc.,* 463 U.S. at 428, 103 S.Ct. at 3140; Fed.R.Crim.P. 6(e)(3)(A)(ii). *Cf. United States v. Lartey,* 716 F.2d at 964 (upholding the use of part-time or con-tract "government personnel" in the grand jury).

Defendant adds that the grand jury took some 32 months from the date of the referral to vote an indictment against him. However, he does not show how this delay, even when coupled with the participation of IRS agents in the grand jury investigation, impaired the independence of the grand jury or otherwise evidenced anything from which the presumption of regularity of grand jury proceedings may be overcome.

Finally, the reference to the alleged abuses detailed in *United States v. Kilpatrick,* 594 F.Supp. 1324 (D.Colo.1984), *rev'd,* 821 F.2d 1456 (10th Cir.1987), *aff'd sub nom., The Bank of Nova Scotia v. United States,* — U.S. —, —, 108 S.Ct. 2369, 2374–78, 101 L.Ed.2d 228 (1988) * does not lend factual support for a claim of abuse in this case. *United States v. Wilson,* 565 F.Supp. 1416, 1436 (S.D.N.Y. 1983). Nor do the allegations that discovery of grand jury matters might lead to evidence of prosecutorial misconduct satisfy defendant's burden to show particularized need. The conclusory and speculative statements made in defendant's papers have been held insufficient countless times. *See, e.g., United States v. Beatty,* 587 F.Supp. 1325, 1334–35 (E.D.N.Y.1984); 8 *Moore's Federal Practice* ¶ 6.05[3], at 6-141 through 6-142 (2d ed. 1988).

Accordingly, the motion for inspection of grand jury materials, including the Rule 6(e)(3)(B) notice, is denied.

## II

In its motion under Fed.R.Crim.P. 7(f) for a bill of particulars, defendant has made one request for particulars with respect to the conspiracy count (Count I) and

---

* With respect to the district court's finding in *Kilpatrick* that the prosecution, *inter alia,* manipulated the grand jury investigation to gather evidence for use in civil audits, the Supreme Court found that such misconduct "might be relevant to an allegation of a purpose or intent to abuse the grand jury process." 108 S.Ct. at 2376. However, the court did not reach the merits of the district court's Rule 6(e) findings other than to note that "no constitutional error occurred during the grand jury proceedings," 108 S.Ct. at 2376, because "it is plain that these alleged breaches could not have affected the charging decision." 108 S.Ct. at 2376. As the prosecution pointed out in oral argument on this motion, the defendant has not made out a case for manipulation of the grand jury in aid of IRS civil audits and has not even alleged the presence of civil division agents of the IRS in the grand jury. The Supreme Court's opinion makes clear that such allegations, if proved, would not automatically support a motion to dismiss the indictment.

several requests concerning the counts charging the filing of false returns for the years 1982 through 1985 (Counts II through V).

## A. Identification of Co-conspirators

The single request concerning the conspiracy count was for an identification of "those individuals with whom the defendant allegedly conspired, combined, confederated and agreed to defraud the United States." Motion for Bill of Particulars (Item 11). The government responds that "[a]t this time, the only individual that the Government will prove conspired with the defendant to defraud the United States is unindicted co-conspirator Richard N. Pearl." Government's Response to Defendant's Pre–Trial Motions at 10.

The indictment suggests, however, the possibility of co-conspirators other than Richard N. Pearl. The preamble to Count I charges that the defendant and Pearl conspired "together and with each other and with other individuals both known and unknown to the grand jury to defraud the United States ..." Indictment, at 1 ¶ 1 (filed January 13, 1988). Indeed, the indictment makes reference to two other individuals, William DeGroote (¶ 8, ¶ 13) and Al Kuhn (¶ 34). Moreover, the government has represented at oral argument that, while it intends at trial to meet its burden of proof to show a conspiracy only through evidence concerning Mr. Pearl, there may be evidence that others aided and abetted the alleged conspiracy.

■ If the Government plans to call any of these unnamed co-conspirators at trial, it should provide a bill of particulars disclosing their names. The rule is well settled that "a bill of particulars is a proper procedure for discovering names of coconspirators the Government plans to call as witnesses at trial." *United States v. Hughes,* 817 F.2d 268, 272 (5th Cir.1987) (citing *United States v. Barrentine,* 591 F.2d 1069, 1077 (5th Cir.1979), *cert. denied,* 444 U.S. 990, 100 S.Ct. 521, 62 L.Ed.2d 419 (1979)), *cert. denied,* —— U.S. ——, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987). *See also United States v. Anderson,* 799 F.2d 1438,

1442 n. 5 (11th Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1567, 94 L.Ed.2d 760 (1987).

■ The issue remains whether the government must furnish in a bill the names of co-conspirators known to them and who will not be called as prosecution witnesses at trial. The cases cited by defendant are indeed ones in which a bill was ordered "to furnish the names of those co-schemers known to them and whom they will claim participated in the alleged scheme with defendant ..." *United States v. Chovanec,* 467 F.Supp. 41, 46 (S.D.N.Y. 1979) (citing *United States v. Rosenstein,* 303 F.Supp. 210, 213 (S.D.N.Y.1969) (government directed to "(i)dentify each co-conspirator alleged in the indictment as 'diverse other persons to the Grand Jury unknown,' by name and address, as such conspirators become known to the prosecution")). *See United States v. Ramirez,* 602 F.Supp. 783, 793 (S.D.N.Y.1985) (government ordered to furnish "[a] statement of the names of other co-conspirators with whom Gonzalez allegedly conspired with or dealt with directly"); *United States v. King,* 49 F.R.D. 51, 53 (S.D.N.Y.1970) (Mansfield, J.) ("the Government is directed to furnish the names of any co-conspirators who become known to it prior to trial").

While these cases "do not limit this court's discretion or foreclose its decision," *United States v. Burgio,* 279 F.Supp. 843, 846 (S.D.N.Y.1968), the circumstances alleged in this case favor a similar exercise of the court's discretion to grant defendant's motion. This is a single-defendant indictment charging a tax evasion conspiracy. The government does not contend that any acts of violence are involved in the alleged conspiracy, and it has otherwise offered no reason for its non-disclosure of alleged known co-conspirators other than that it need only prove defendant conspired with one other person and that person has been named in the indictment.

The government's proffered reason for non-disclosure, however, actually supports defendant's motion for the bill. Judge Motley was recently confronted with a similar situation in *United States v. Biaggi,*

No. 87 Cr. 265 (S.D.N.Y. December 3, 1987) [1987 WL 27722], *on resubmission from*, 675 F.Supp. 790, 808–09 (S.D.N.Y.1987). In that case, defendant Betso was charged in a RICO count with only two predicate acts of racketeering activity. He sought a bill of particulars specifying what, if any, other predicate acts of racketeering the government would seek to link him with in its proof at trial. Judge Motley held:

> If the two predicate acts described in the indictment are the only acts through which Betso is alleged to have participated in the pattern of racketeering activity, then the Government must prove his involvement in both of them to sustain the RICO charge. See 18 U.S.C. § 1961(5) (defining "pattern of racketeering activity" to require at least two acts of racketeering activity). If the Government fails at trial to sustain its burden with respect to either predicate act, and if it introduces no proof of participation in other predicate acts, Betso will be entitled to dismissal of the RICO count as against him. He is therefore legitimately concerned to know whether he need prepare a defense against allegations of his participation in predicate acts not listed in the indictment. Because Betso will be unable adequately to prepare his defense without this knowledge, the court directs the Government to furnish particulars with respect to ... whether Ronald Betso will be alleged to have participated in "the pattern of racketeering activity" other than by Racketeering Acts Nine and Eighteen.

*Id.*

This case is similar to *Biaggi*. Here, if the government fails at trial to sustain its burden with respect to defendant's involvement with the named co-conspirator, Richard N. Pearl, and it introduces insufficient evidence of defendant's involvement with any other conspirator, defendant would be entitled to dismissal of Count I. Accordingly, defendant is "legitimately concerned to know" whether he need prepare a defense against allegations of his participation in acts constituting a conspiracy with others not named in the indictment.

The foregoing analysis comports with the general purpose of Fed.R.Crim.P. 7(f) which permits a defendant to seek a bill of particulars. As stated recently in *United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988):

> The principles governing requests for a bill of particulars are well settled. A bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (citations omitted) (per curiam).

*United States v. Davidoff*, 845 F.2d at 1154. The Government "need not particularize all of its evidence" *Id.* (citing *United States v. Gottlieb*, 493 F.2d 987, 994 (2d Cir.1974)), and this may mean in the present case that the prosecution may fulfill the purpose of an indictment and bill of particulars without "a detailed statement of all the parties with whom [the defendant] was alleged to have had dealings during the term of the conspiracy." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.1975), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975). However, the government must provide the names of individuals referred to in Count I by the phrase "and with other individuals both known and unknown to the grand jury." *See United States v. Rosenstein*, 303 F.Supp. 210, 213 (S.D.N.Y.1969).

If it was an abuse of the trial court's discretion in *Davidoff* to deny a motion "for a straightforward identification in a bill of particulars of the identity of victims of offenses that the prosecution intends to prove," *United States v. Davidoff*, 845 F.2d at 1155, and similarly reversible error to have denied a bill identifying which of defendants' insurance claims for burglary losses were fraudulent in *United States v. Bortnovsky, supra*, it is certainly within the court's discretion to order the provision of a bill in a conspiracy case identifying unindicted co-conspirators who the govern-

ment admits may be "accessories" to the conspiracy and the subject of evidence it intends to adduce at the trial. The government has, either voluntarily or by court order, provided such a bill in other cases, *see e.g. United States v. Cunningham,* 672 F.2d 1064, 1075 n. 9 (2d Cir.1982); *United States v. James,* 609 F.2d 36, 43 (2d Cir. 1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Lam Lek Chong,* 544 F.2d 58, 63–64 (2d Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1124, 51 L.Ed.2d 550 (1977); *United States v. Mallah,* 503 F.2d 971, 982 n. 5 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), and no sound reason is advanced why it should not do so in this case.

### B. *Government's Theory of Proof*

With respect to Counts II through V charging a violation of 26 U.S.C. § 7206(1) in each of four separate years, the defendant has sought and obtained particulars concerning the Government's theory of proof that defendant failed to report income. The Government states:

> Counts 2, 3, 4, and 5 of the indictment charge, in part, that the defendant failed to report all of the income he received in calendar years 1981 through 1984. In proving this material false matter, the Government intends to primarily utilize the specific items method of proof. In conjunction with this method of proof, the Government will introduce evidence of personal expenditures in excess of reported taxable income.

Government's Response to Defendant's Pretrial Motions at 8 ¶ 1. The Government contends that this case is a "specific items method of proof" and "expenditures method of proof" case. Evidently, it intends to rely on both theories at trial.

Defendant seeks, however, further particulars concerning the government's anticipated proof as follows:

7. If the government's method of proof is, in whole or in part, the so-called "expenditures method of proof," state:

a. The amount of cash on hand or its equivalent at the beginning of each tax year charged;

b. For each year, the date, amount, space and manner of payment of each expenditure, and whether the expenditure is deductible;

c. For each year, the taxable source or sources of the defendant's income;

d. For each year, any eliminations allowed due to non-taxable receipts; and

e. For each year, deductions, credits, and exemptions which should be allowed.

8. If the government's method of proof is, in whole or in part, the so-called "specific items method of proof," state:

a. For each year, the specific items of omitted income, including sources, dates of receipt, and manner of payment;

b. For each year, any deductions, credits, or exemptions which were but, should not have been, claimed, together with the reason or reasons why the item is disallowed.

\*    \*    \*    \*    \*    \*

10. As to Counts II, III, IV and V:

a. Specify that amount of income defendant allegedly failed to report from the Jay Will Theater Corporation (Monroe Theater).

b. Specify the date, character, and source of the income allegedly received and unreported from the Jay Will Theater Corporation (Monroe Theater).

c. Specify that amount of income defendant allegedly failed to report from the Candid Vista Theater Corporation (Lyell Theater).

d. Specify the date, character, and source of the income allegedly received and unreported form the Candid Vista Theater Corporation (Lyell Theater).

e. Specify that amount of income defendant allegedly failed to report from the Cinema Art Theater Corporation.

f. Specify the date, character, and source of the income allegedly received and unreported from the Cinema Art Theater Corporation.

Motion For A Bill of Particulars at 6–7, 8. Defendant contends that tax cases are distinguishable from other prosecutions in that particulars such as are requested here ought to be furnished.

The Government, on the other hand, contends that (1) "[t]he amount of cash on hand at the beginning of each tax year is not relevant" to either the expenditures method of proof or the specific items method, (2) further particulars would involve impermissible disclosure of evidentiary detail not required to be furnished in a bill, and (3) a bill is unnecessary because of the occurrence of voluntary disclosure during which the government turned over "voluminous records, documents and other items." Government's Response at 8–9 ¶ 7–8.

A resolution of these contentions requires a brief synopsis of the alternative theories of proof upon which the Government intends to rely at trial. The most straightforward method of proving a violation of 26 U.S.C. § 7206(1) is by the "specific items" method of proof. It is explained as follows:

> The specific item method is ... direct in its operation. The usual stragegy ... is for the Government to produce evidence of the receipt of specific items of reportable income by the defendant that do not appear on his income tax return or appear in diminished amount.

*United States v. Horton*, 526 F.2d 884, 886 (5th Cir.1976), *cert. denied*, 429 U.S. 820, 97 S.Ct. 67, 50 L.Ed.2d 81 (1976), *quoted in United States v. Marabelles*, 724 F.2d 1374, 1377 n. 1 (9th Cir.1984). *See also United States v. Citron*, 783 F.2d 307, 310 n. 4 (2d Cir.1986). Of course, the most critical element of proof under this theory is the "specific item" of income which it is contended went unreported.

On the other hand, in *Holland v. United States*, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court sanctioned the use of indirect methods of proof in tax evasion cases. As explained in *United States v. Bianco*, 534 F.2d 501 (2d Cir. 1976), *cert. denied*, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976), the "cash expenditures" method of proof is "a variant of the 'net worth' method." *Id.* at 503. The net worth method "involves the ascertaining of a taxpayer's net worth positions at the beginning and end of a tax period, and deriving that part of any increase not attributable to reported income." *Id.* (quoting *Taglianetti v. United States*, 398 F.2d 558, 562 (1st Cir.1968), *aff'd*, 394 U.S. 316, 89 S.Ct. 1099, 22 L.Ed.2d 302 (1969)). The net worth method thus "permits circumstantial proof of a defendant's taxable income in cases where the prosecution is unable directly to show specific items of such income." *Id.*

The cash expenditures method is similar to the net worth method, but focuses on resources at hand.

> Under the "cash expenditures" method, after taking into account the amount of resources the tax payer had on hand at the beginning of a period, the income received by the taxpayer for the same period is compared with his expenditures that are not attributable to his resources on hand or non-taxable receipts during the period. A substantial excess of expenditures over the combination of reported income, non-taxable receipts, and cash on hand may establish the existence of unreported income.

*United States v. Citron*, 783 F.2d 307, 310 (2d Cir.1986) (collecting cases). Contrary to the Government's position at oral argument and in its papers, "establishment of cash on hand is essential and recognized to be the most difficult component of proof in a tax prosecution by the net worth or cash expenditures methods." *United States v. Citron*, 783 F.2d at 316 ("although formal proof of net worth is not required in a 'cash expenditures' case").

> Under the cash expenditure method the government bears the burden of demonstrating "to a reasonable certainty" (i) expenditures during the period in question and (ii) the opening net worth of the taxpayer, including cash on hand. *See Bianco, supra,* at 504. However, net worth need not be established by a formal net worth statement. Rather, accurate inclusion of diminution of resources serves the function of enabling the jurors

to determine if expenditures were financed by liquidation of assets, depletion of a cash hoard, or unreported income. *United States v. Citron*, 783 F.2d at 315 (citing *United States v. Fisher*, 518 F.2d 836, 842 n. 7 (2d Cir.1975), *cert. denied*, 423 U.S. 1033, 96 S.Ct. 565, 46 L.Ed.2d 407 (1975)). Without proof of cash on hand, "the expenditures might be attributable to conversion of the taxpayer's prior accumulated capital rather than to income received during that period." *United States v. Gay*, 567 F.2d 1206, 1207 (2d Cir.1978).

The government has made generalized arguments opposing defendant's motion for a bill of particulars. While these general contentions have some application in prosecutions of other offenses, they are insufficient in criminal tax cases. A more liberal approach to such motions has been permitted in criminal tax cases because of their complexity and the use of indirect methods of proof. Some circuits take a more restrictive approach. *See e.g., Azcona v. United States*, 257 F.2d 462, 464 (5th Cir. 1958); *United States v. Caserta*, 199 F.2d 905, 910 (3rd Cir.1952); *United States v. Chapman*, 168 F.2d 997, 998–99 (7th Cir. 1948). The Second Circuit, however, has evidently disapproved such rulings and endorsed those cases in which "[b]ills of particulars have been quite freely granted in net worth and other tax evasion cases." *United States v. O'Conner*, 237 F.2d 466, 476 n. 10 (2d Cir.1956). An examination of how liberal the cases are in each of the two types of criminal tax cases relevant to this indictment helps to guide the court's discretion whether to grant a bill of particulars.

In "specific items" theory cases, courts have granted motions for a bill seeking the "particular items" and "amounts" of allegedly unreported income, together with "the sources from which each item was derived, disclosing when, where, how and by whom payment was made to each of the defendants ... [and] specify[ing] the deductions and costs allowed and/or disallowed against such income ..." *United States v. Hedman*, 458 F.Supp. 1384, 1386 n. 3 (N.D. Ill.1978). *See United States v. Goldstein*, 56 F.R.D. 52, 56 (D.Del.1972) ("the Government will be required to supply them with the date, amount, character and source of unreportable income"); *United States v. King*, 16 F.R.D. 124, 125 (N.D.N.Y.1954) ("items and amounts which the government claims go to make up the true income for the years in question"). In *United States v. Goldstein*, the court explained that providing defendants with the "character" of unreported income "means the Government must indicate whether each item is from pensions, rents, royalties, legal fees, dividends, interest, capital gains, farm income, etc." *United States v. Goldstein*, 56 F.R. D. at 56 n. 10. With respect to the "source" of income, the court explained: "E.g. if dividends, the corporation issuing the dividend, if legal fee the client paying the fee, if rental income the property which produced it, etc." *United States v. Goldstein*, 56 F.R.D. at 56 n. 11.

■ In "cash expenditures" theory cases, "it is not sufficient to merely disclose to the defendant the theory upon which the government plans to proceed, ..., despite the government's being put to that method of proof because of the defendant's alleged failure to maintain accurate books." *United States v. Hoornbeek*, 164 F.Supp. 657, 659 (S.D.N.Y.1954). Rather, particulars should be granted specifying (1) the claimed net worth, including cash on hand at the beginning and end of each reporting period relevant to the indictment, (2) the expenditures made, including the date, payee, and amounts thereof, and (3) the deductions allowed in arriving at claimed taxable income. *See United States v. Hoornbeek*, 164 F.Supp. at 658; *United States v. Geller*, 163 F.Supp. 502, 503 (S.D.N.Y.1958) ("If the net worth expenditure theory is to be utilized, then the bill must set forth the approximate opening and closing net worths for each year covered in the indictment, as well as the date, the payee, the amount and manner of payment of the expenditures claimed"). While it is true that, in the oft-cited case of *United States v. Dolan*, 113 F.Supp. 757 (D.Conn.1953), the court suggested that the government's bill of particulars would be "sufficient if it discloses the period during which it will offer proof of expenditures

made and the dates as of which it will offer proof of the defendant's net worth," *id.* at 760, the court relied for this proposition on the two cases, (*United States v. Caserta, supra,* and *United States v. Chapman, supra*) disapproved by the Second Circuit in *United States v. O'Connor,* 237 F.2d at 476 n. 10.

In determining the merits of defendant's motion for a bill of particulars with respect to each method of proof described above, the allegations of the indictment also must be considered. In each of Counts II through V, the indictment clearly specifies the alleged sources of unreported income in each of the four reporting periods (specified amounts of interest income on a loan to Richard N. Pearl, unspecified amounts of income from three separate and identified corporate entities, and an amount specified in Count V from another identified corporation). Indeed, with respect to the interest income from Pearl and the income attributed in Count V to the Cinema Art Theater Corporation, the amounts are identified. While the amounts of income from the other corporate entities are not specified, the indictment alleges that each of these corporations operate an adult entertainment moviehouse. The moviehouses are named and their general location revealed (see Count I). While these allegations are quite specific concerning the alleged sources of the specific items of unreported income in each of the four reporting periods, much more has been required to be furnished by way of a bill in criminal tax cases than this indictment reveals.

■ Therefore, with respect to paragraph 7 of defendant's motion for a bill of particulars (quoted above), and to the extent the government relies on the cash expenditures method of proof, the government shall file a bill approximating the "cash on hand or its equivalent at the beginning of each tax year charged," and itemizing expenditures during each reporting period, stating whether it is claimed each expenditure is deductible (Request 7a–b). The request for the "taxable source or sources of the defendant's income" in Request 7c is denied because the indictment sufficiently identifies the alleged sources of defendant's allegedly underreported income. The request for an itemization of non-taxable receipts, deductions, credits, and exemptions is, to the extent not covered by particulization required by Request 7b, denied as evidentiary.

■ In accordance with the principles articulated above, and to the extent the government relies on the "specific items" method of proof, the request in paragraph 8 for particulars of "omitted income, including sources, dates of receipt, and manner of payment" together with claimed improperly stated "deductions, credits, or exemptions" is granted. However, the request for a statement of reasons for any disallowance is denied as evidentiary and as unduly revealing of the government's theory of proof.

■ With respect to paragraph 10 of defendant's motion, which requests the amount, date, character, and source of income allegedly received and unreported from each of three named corporate entities, the motion is granted to the extent required by the court's rulings on paragraphs 7–8 of defendant's motion, and additionally the government shall furnish particulars concerning the "character" and "source" of unreported income to the extent it is possible and in light of the definitions of those terms in *United States v. Goldstein,* 56 F.R.D. at 56 nn. 10–11.

■ The requirement of particulars, particularly as to approximate amounts of unreported or underreported income, serves the salutary purpose of identifying for the defendant the blocks of alleged income to which the indictment is directed and to which a defense must be prepared. Furthermore, the government will not be prejudiced or unduly restricted at trial because even though "the government may not have proved every dollar of income alleged by the indictment to have been concealed, proof of some lesser amount will sustain a verdict if, . . ., it remains *material.*" *United States v. Cole,* 463 F.2d 163, 167 (2d Cir.1972), *cert. denied,* 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972) (emphasis supplied). As made clear in

*United States v. Citron,* 783 F.2d at 313, the critical element of a violation of 26 U.S.C. § 7206(1) is a "material" misstatement on the return, not evasion of a substantial tax. Any "false statements relating to gross income, irrespective of the amount, constitute a material misstatement in violation of Sec. 7206(1)." *Id.* (*quoting United States v. Hedman,* 630 F.2d 1184, 1196 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981)).

Finally, defendant's contention that voluntary discovery of "voluminous" documents obviates the need for a bill of particulars has been rejected in *United States v. Davidoff,* 845 F.2d at 1155 and *United States v. Bortnovsky,* 820 F.2d at 575 ("The Government did not fulfill its obligation merely by providing mountains of documents to defense counsel ..."). While the practice of voluntary discovery is to be encouraged, and in any event is required by Local Rule 18(b), it may not substitute for straightforward identification in a bill of essential matters that the defendant needs to avoid surprise at trial, to interpose a plea of double jeopardy and to know "with sufficient particularity the nature of the charge against him." *United States v. Bortnovsky,* 820 F.2d at 574.

## CONCLUSION

For the reasons indicated in Part I of this opinion, defendant's motion for disclosure of grand jury materials is denied. For the reasons set forth in Part II of this opinion, defendant's motion for a bill of particulars is granted in part and denied in part as indicated therein.

The foregoing constitutes a decision and order pursuant to 28 U.S.C. § 636(b)(1)(A). The parties should be on notice that, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 37(a)(2), this order shall be final unless within ten (10) days after being served with a copy thereof a party files with the Clerk and serves upon opposing counsel a written appeal specifying the party's objections and the manner in which it is claimed that this order is clearly erroneous or contrary to law.